## UNITED STATES DISTRICT COURT

## DISTRICT OF COLORADO

| | |
|---|---|
| IBOLYA RADULESCU, individually and on behalf of all others similarly situated, | Civil Action No. _____ |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| THE WESTERN UNION COMPANY, a Delaware Corporation headquartered in Colorado; WESTERN UNION FINANCIAL SERVICES, INC., A Delaware Corporation headquartered in Colorado, | |
| | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff IBOLYA RADULESCU ("Plaintiff"), individually and on behalf of all others similarly situated, alleges based on knowledge as to herself and her own acts, and upon information and belief, against Defendants THE WESTERN UNION COMPANY and WESTERN UNION FINANCIAL SERVICES, INC. (jointly referred to herein as "Western Union"), and each of them, as follows:

### NATURE OF THE ACTION

1.      To give this Court some background and context, it is important to inform the Court that Western Union has previously been successfully sued in this Court, in an earlier class action lawsuit, for the same alleged conduct. See, *Tennille v. Western Union Company*, 2009-cv-00938-JLK ("*Tennille Action*"). The *Tennille Action* was filed on April 23, 2009.  Based on information and belief Western Union has not remedied, corrected or changed its business practices complained of in the *Tennille Action* as of April 11, 2013 (the date when Plaintiff used Western Union to send funds) through August 2018, when Western Union notified Plaintiff that funds she attempted to send through Western Union were never received by the intended

*Radulescu v. The Western Union Company*

recipient. That notification was more than five (5) years after Plaintiff used Western Union to send funds.

2.      Plaintiff IBOLYA RADULESCU was not a member of the *Tennille Action* class action settlement and is thus not barred by any settlement of the *Tennille Action* from pursuing her claims and claims for all others similarly situated.  Attached to this Complaint as Exhibit 1 and incorporated by this reference is a letter from the Claims Administrator of the *Tennille Action* confirming this fact.

3.      This is a putative class action brought by Plaintiff individually and on behalf of a class, as defined more fully herein, of all persons who between April 2013 and the date of trial attempted to transfer money using Western Union, whose money transfers were unredeemed, whose money was kept and utilized by Western Union for its own benefit and who were never notified by Western Union (until applicable law required notice to the customers that the money would escheat to the state).

4.      When Western Union agrees to wire money for a customer, it takes the customer's contact information. Sometimes the money transfer does not go through for any number of reasons, which are not germane to the allegations against Western Union.  This lawsuit addresses what Western Union does with customers' money when Western Union knows a money transfer did not go through and the customer's money has not been redeemed.

5.      What Western Union should do is immediately notify the customer and inform them of the fact the money transfer has not been redeemed and give the customer an opportunity to correct the error or get a refund of the funds deposited with Western Union.

6.      What Western Union does instead is an entirely different story: Western Union purposely does not notify the customer and holds onto the customer's money and makes use of it by using it to make financial investments and earn interest for its own benefit until applicable state statutes require the funds escheat to the state unless otherwise claimed by the customer. Only then, many years later and after making use of that money for its own benefit and financial

*Radulescu v. The Western Union Company*

gain, does Western Union attempt to notify the customer the transaction they paid for never transpired, or the money went unredeemed, and the customer has only a limited amount of time to claim the money - minus a fee charged by Western Union against the funds - because state law requires it under unclaimed property statutes in advance of escheat.  Under such circumstances not only does Western Union benefit financially from holding onto the customers' money for years, Western Union then charges the customer a separate fee to get their money back; Western Union not only has its cake and gets to eat it too, but the customer suffers double-the-harm by not having the use of their money for years and then has to pay a fee to get it back.

7.      Western Union brags about this unfair and deceptive business practice in its publicly filed financial statements, telling investors it always has access to more than $100 million in cash from these unremitted funds that is essentially better than an interest free loan because Western Union gets to both make use of the money and then ultimately, after using the money for years, charge the customer a fee to return the money instead of paying the customer interest. According to Western Union's Form 10-K for the period ending December 31, 2007, such unredeemed funds, or "unsettled money transfers," are classified as "settlement assets" and "are not used to support [Western Union] operations" but are utilized to "earn income" for the company.                    *Id*.                    at                    p.                    59. https://www.sec.gov/Archives/edgar/data/1365135/000119312508038154/d10k.htm       Western Union reported $203.5 million of such "settlement assets" on hand in 2007 and $348.8 million on hand in 2006. *Id*. at 85.

8.      Western Union still has not changed its practices, and still brags about this unfair and deceptive business practice in its financial statements and on its most recent Form 10-K for the period ending December 31, 2018, Western Union still states that the "settlement assets" on their "consolidated balance sheets are not used to support [their] operations", however they "earn income       from       investing       [those]       funds".       *Id*.       at       p.       62.       See, https://www.sec.gov/Archives/edgar/data/1365135/000155837019000848/wu-0181231x10k.htm.

*Radulescu v. The Western Union Company*

3

Western Union reported $3.8138 billion of such "settlement assets" on hand in 2018 and $4.1889 billion in 2017. *Id*. at 83.

9.      There is no justification for this deceptive practice, which preys upon the unsophisticated and vulnerable as Western Union's typical customer is often economically unsophisticated, lower educated and often lacks access to bank accounts – which is why they are using Western Union to transfer money instead of a normal bank.  Indeed, immigrant rights groups have challenged Western Union's exorbitant fee structure, and Western Union knows full well that it can likely get away with the misbehavior described in this complaint because of its customer demographics.

10.     As alleged more fully herein, Plaintiff seeks damages and equitable relief on behalf of herself and all other Western Union customers whose money transfers did not go through or went unredeemed, they were never told by Western Union that the money transfers they sent were unredeemed, or who were only informed many years later, and who were not class members in the *Tennille Action* (proof attached hereto as Exhibit 1), such as the Plaintiff herein.

11.     This Complaint alleges claims for conversion on a nationwide basis, violations of Washington law, or alternatively Colorado law, or alternatively, for violations of substantially similar consumer protection laws, and for unjust enrichment and conversion against defendant Western Union, as well as for declaratory judgment.

## JURISDICTION AND VENUE

12.     This Court has subject-matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332(d)(2)(A), insofar as the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and this is a class action in which the members of the class of Plaintiffs are citizens of states different from Defendant Western Union which is a Colorado corporation.

*Radulescu v. The Western Union Company*

13.     This District is the proper venue for adjudication of the claims asserted herein insofar as Defendants and each of them has its principal place of business in this District.  See, 28 U.S.C. § 1391(a)(1).

**PARTIES**

14.     Plaintiff IBOLYA RADULESCU ("Plaintiff") is a natural person and resident of Bellevue, Washington. Plaintiff is a member of the class of Western Union customers defined herein (the "Class").

15.     Defendant THE WESTERN UNION COMPANY is a Delaware corporation with its principal place of business in Denver, Colorado.

16.     Defendant WESTERN UNION FINANCIAL SERVICES, INC., ("Western Union Financial") is a Delaware corporation with its principal place of business in Denver, Colorado.  Defendant Western Union Financial is believed to be a separately incorporated legal entity although a wholly owned subsidiary of its Co-Defendant THE WESTERN UNION COMPANY.

**FACTUAL BACKGROUND**

17.     For several years prior to 2013, up through and including the year 2013, Plaintiff has been using Western Union's money transfer services to send money to her relatives in Romania, Europe. Plaintiff sent various sums of money using Western Union's money transfer services, including the $100.00 transaction which was sent on April 11, 2013.

18.     To make these payments, Plaintiff went to a Western Union agent and sent the payments via Western Union's money transfer service. Western Union charged Plaintiff various dollar amounts to transfer each payment.

19.     In April of 2013, Western Union did not deliver Plaintiff's payment or said payment was never redeemed. Western Union kept Plaintiff's money, and did not return it or otherwise notify Plaintiff that it was still in possession of her money until years had passed.

20.     It was not until August 2018 that Western Union first made any effort to notify Plaintiff the transaction which she had paid for had not gone through or the money Plaintiff attempted to send was not redeemed by the recipient.  In or about August 2018, Plaintiff received a letter from Defendant Western Union Financial. The letter stated that, as required by law, Western Union would turn over her unredeemed funds (the property) to the State's Treasurer's Office as unclaimed property, if no response is received in writing within the time period specified in the letter. Attached hereto as Exhibit "2" and incorporated herein is a copy of the letter sent to Plaintiff. The letter was entirely silent on why Western Union was only now, more than five years later, notifying Plaintiff when Western Union had Plaintiff's contact information the entire time it was "holding" and, unbeknownst to Plaintiff, making use of and earning money on the use of Plaintiff's money. This is especially alarming since in the time period between 2013 and 2018, Western Union was already a defendant in an almost identical lawsuit (The *Tennille Action*), and Western Union has not changed their business practices up through at least August 2018.

21.     The August 2018 letter to Plaintiff also stated that Western Union could reduce Plaintiff's refund from the amount of the original money transfer due to Western Union's fees and charges, or by applicable law. (See, Exhibit 2). Plaintiff's 2013 payment had been in Western Union's possession the entire time. Accordingly, Western Union had been in possession of, and had been generating income for itself from the use of Plaintiff's money for more than five (5) years.

22.     Plaintiff makes the following fraud allegations with as much specificity as possible absent access to information necessarily available only to Western Union:

> **Who**: Executives of Western Union, including but not limited to Khalid Fellahi, President of Consumer Money Transfer, who is responsible for the Western Union's consumer money transfer business globally, in particular, leading initiatives to transform the customer experience.  In addition to Mr. Fellahi, Plaintiff alleges other unknown

*Radulescu v. The Western Union Company*

employees of Western Union were responsible for implementing and/or carrying out Western Union's policies and practices as herein alleged.  Plaintiff is unable to identify at this time the true names and identities of those persons within Western Union who are responsible for the decisions and actions that have harmed Plaintiff and the Class. The identity of such persons is known to Western Union only, and can only be learned in discovery. At minimum, the relevant persons will be those within Western Union who initiated the practices, and undertook the decisions and actions, which damaged Plaintiff and the Class, as alleged herein.

**What**: Western Union's fraudulent and deceptive business practice of holding unremitted funds without contacting the owner of the funds and making use of those funds for its own benefit while at the same time charging a fee from the customer in order to return the funds. Western Union accepts money from customers to transfer to others, also for a fee. Western Union from time to time fails to successfully transfer its customers' money. Western Union has the contact information for each of its customers. Yet, when the money the customer paid to have transferred goes unredeemed, Western Union does not return this unredeemed money to its customers, or notify them that their money has not been redeemed, until after the passage of several years, all while concealing from its customers the fact 1) the money customers remitted was unredeemed, 2) that Western Union was in possession of their customers' unredeemed money, 3) that Western Union was using customers' unredeemed money to invest and make more money for itself, and 4) there would be a fee charged to customers for returning their unredeemed money. Western Union's failure to return its customers' money to them or to notify them that their transaction did not complete for years is particularly egregious in light of their longtime emphasis on speed as being a major benefit of their service (for instance, Western Union's decades-long slogan: "The fastest way to send money – worldwide."). Due to the large volume of money transfers in which Western Union engages, the total

*Radulescu v. The Western Union Company*

amount of unredeemed money in its possession is very large. The total amount cannot be known to Plaintiff without discovery, but the publicly available information referenced herein suggests it is in the hundreds of millions, if not billions, of dollars. All of this money should rightfully be disgorged and/or returned to Western Union's customers, not used as a source of generating revenue for Western Union which has been unjustly enriched at the expense and to the detriment of its customers like Plaintiff.

**When**: Plaintiff does not know when Western Union began engaging in the practices alleged herein. However, Western Union engaged in the wrongful conduct since at least 2008 and at all times relevant herein, and still does so.  Plaintiff further alleges that notwithstanding the *Tennille Action* and its resolution in or about 2013, Western Union has continued unabated to engage in the conduct as alleged herein.

**Where**: Western Union originated and undertook the wrongful actions alleged herein from its corporate headquarters and principal place of business in Colorado and possibly through various other customer service departments throughout the country. The letter sent to Plaintiff originated in Western Union's Financial Services branch in Colorado. Plaintiff's contact information, as well as the amount of her unredeemed money, was either stored at or accessible to personnel at the Western Union offices in Colorado during the entire five (5) years that Western Union wrongfully held Plaintiff's money. Western Union personnel aggregated Plaintiff's unredeemed money with unredeemed money from other Class members and invested and earned substantial financial returns and interest on that money and kept those financial returns and interest as income for Western Union itself, and maintained a record of all this activity.

**How**: Western Union failed to timely return the unredeemed money belonging to Plaintiff and the Class, even though it could have done so. Western Union failed to notify Plaintiff and the Class that it had that it was holding their unredeemed money, or only did so after a period of years, even though Western Union could have contacted Plaintiff and the

*Radulescu v. The Western Union Company*

Class at any time. Western Union has been enriched at the expense of Plaintiff and the Class, by keeping the unredeemed money belonging to Plaintiff and the Class, and by earning and keeping interest on unredeemed money that does not belong to it. Western Union has behaved in deceptive fashion toward Plaintiff, the Class and the public at large by not disclosing that it would not return unredeemed money and would use the unredeemed money to generate income that it would keep for itself.

**COLORADO LAW, OR IN THE ALTERNATIVE,**

**WASHINGTON STATE LAW APPLIES TO THE CLASS**

23.     As a federal court exercising diversity jurisdiction, the Court must apply the choice of law rules of Colorado, the forum state.

24.     Colorado's substantive laws may be constitutionally applied to the claims of Plaintiff and the Class Members under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution. Colorado has the most significant relationship to the occurrence and to the parties, as alleged herein, thereby creating state interests that ensure that the choice of Colorado state law is not arbitrary or unfair.

25.     Western Union's headquarters are located in Colorado. Upon information and belief, Western Union carried out all the actions relevant to this Complaint from its various operational centers located in Colorado.

26.     Colorado is the place where the injury was inflicted. Western Union sent the letters to Plaintiff from its branch in Englewood, Colorado, years after it first became aware that Plaintiff's money had not been redeemed by the recipient. Western Union's failure to return the unredeemed money, and failure to notify Plaintiff it was holding the unredeemed money, are the injury Plaintiff and the Class have suffered.

27.     The place where the conduct causing the injury occurred is Colorado. The letters Western Union sent to Plaintiff show that Western Union's Financial Services division had Plaintiff's address at all relevant times herein, and could have notified her at any time that

*Radulescu v. The Western Union Company*

Western Union was holding her unredeemed money. Instead, Western Union held onto Plaintiff's money and earned interest on it and only notified Plaintiff that it was holding her money after a period of five years.

28.     The place of business of Western Union that is relevant to the misconduct alleged herein is Colorado. Western Union's Financial Services division is the source of the letters, which notified Plaintiff that Western Union was holding her unredeemed money. Western Union's Customer Service Center could have notified her at any time and failed to do so.

29.     The place where the relationship is centered between Western Union and Plaintiff, relevant to the misconduct alleged herein, is Colorado. Western Union's Financial Services division in Colorado sent the letters to Plaintiff, was aware that Plaintiffs money had not been delivered, and could have notified her at any time, and did not do so, and instead wrongfully withheld her money.

30.     Western Union's headquarters and principal place of business are located in Colorado. Colorado has a paramount interest in regulating Western Union's conduct, and Western Union's decision to locate its principal place of business in Colorado and avail itself of Colorado courts and laws render the application of Colorado law to the claims at hand constitutionally permissible.

31.     If Colorado is the place where decisions regarding the conduct in this Complaint were made, then Colorado is the place the injury occurred.

32.     Similarly, if Colorado is the place where the policies of Western Union are set which gave rise to the misconduct alleged herein, the conduct causing the injury occurred in Colorado.

33.     Further, Colorado law is appropriately applied to the putative Class here because, on information and belief, Western Union's Terms and Conditions states that its services are "governed by Colorado law, without regard to its rules regarding conflicts of law."

*Radulescu v. The Western Union Company*

34.     As a result of the foregoing, Colorado is the state with the most significant relationship so the occurrence and the parties.

## CLASS ACTION ALLEGATIONS

35.     *Class Definition*. Plaintiff brings this action individually and on behalf of the following class of similarly situated persons (the "Class"), including subclass, of which Plaintiff is a member:

Rule 23 (b)(2) Injunctive Relief Class:
All persons and entities who sent money using Western Union's money transfer services, and whose money went unredeemed and was not returned within 60 days, and who were not members of the Settlement Class in the *Tennille Action*;

Rule 23 (b)(3) Nationwide Damages Class
All persons and entities wherever they reside in the United States who sent money using Western Union's money transfer services and whose money went unredeemed and was not returned within 60 days, and who were not members of the Settlement Class in the *Tennille Action*;

Rule 23 (b)(3) State Sub-Class(es):
a.      All persons and entities who are residents of Colorado and who sent money using Western Union's money transfer services, and whose money went unredeemed and was not returned within 60 days, and who were not members of the Settlement Class in the *Tennille Action*.

b.      All persons and entities who are residents of Washington and who sent money using Western Union's money transfer services, and whose money went unredeemed and was not returned within 60 days, and who were not members of the Settlement Class in the *Tennille Action*.

36.     Excluded from the Class(es) are Western Union, Western Union Financial Services, Inc., and any of its officers, directors and/or employees, the presiding judge, and any member of their immediate families.  Plaintiff hereby reserves the right to amend the above class definitions based on discovery and the proofs at trial.

37.     *Numerosity*. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at

this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds, if not thousands, of persons in the Class.

38.     *Commonality*. There are questions of law or fact common to the Class including, *inter alia*, the following:

a.   Whether Western Union converted customers' unredeemed money to its own use and financial benefit to the detriment of those customers by depriving those customers of the use and benefit of their money;

b.   Whether Western Union violated Colorado law by failing to notify customers timely that their money transfers were unredeemed and informing said customers of their right to a return of those unredeemed monies;

c.   Whether Western Union violated Washington law by failing to notify customers timely that their money transfers were unredeemed and informing said customers of their right to a return of those unredeemed monies;

d.   Whether Western Union violated specific state laws, by failing to notify customers timely that their money transfers were unredeemed and informing said customers of their right to a return of those unredeemed monies;

e.   Whether Western Union was unjustly enriched by failing to timely return customers' monies that were unredeemed and/or generating income and financial benefit for itself on those unredeemed funds and/or not sharing those monies generated with the rightful owner of those funds;

f.   Whether Plaintiff and Class have been damaged by Western Union's conduct and, if so, what is the proper measure of such damages.

39.     *Typicality*. The claims or defenses of Plaintiff are typical of the claims of the Class, alleged herein. Plaintiff, the same as every class member, placed funds to be transferred with Western Union, those funds went unredeemed and Western Union failed to inform Plaintiff of the unredeemed funds and even generated monies through the use of those funds which Western Union did not share with Plaintiff.

40.     *Adequacy*. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained undersigned counsel who are competent and experienced in the prosecution

*Radulescu v. The Western Union Company*

of complex class action litigation. The interests of the Plaintiff and her counsel are aligned with, and not antagonistic to, those of the Class.

41.     *Fed. R. Civ. P. 23(b)(2) Requirements*. The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist as Western Union has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

42.     The prosecution of separate actions by members of the Class would create a risk of establishing incompatible standards of conduct for Western Union. For example, one court might decide that the challenged actions are illegal and enjoin them, while another court might decide that those same actions are not unlawful. Individual actions may, as a practical matter, be dispositive of the interest of the Class, who would not be parties to those actions.

43.     Western Union's actions are generally applicable to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

44.     Western Union's alleged uniform scheme and common course of conduct make declaratory relief with respect to the Class as a whole appropriate.

45.     *Fed. R. Civ. P. 23(b)(3) Requirements*. This case satisfies the prerequisites of Fed. R. Civ. P. 23(b)(3). The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.

46.     The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary, injunctive and equitable relief at issue for each individual Class member.

47.     This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class.

*Radulescu v. The Western Union Company*

## **FIRST CAUSE OF ACTION**
### **(Conversion)**

48.     Plaintiff repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

49.     Plaintiff brings this cause of action for conversion for herself and on behalf of a nationwide class of all others similarly situated wherever they reside in the United States. Plaintiff alleges that each State of the United States recognizes the common law tort of conversion.

50.     As herein alleged Defendant Western Union retained possession of Plaintiff's and all other Class members' money despite the funds having not been successfully transferred and/or otherwise having been unredeemed by the recipient of the transfer to whom Plaintiff and the Class intended to transfer the money.

51.     As herein alleged, Defendant Western Union refused and/or failed to notify Plaintiff and the Class (until such time years later when the funds would escheat to the state) that their money transfer did not go through or was otherwise unredeemed.  Moreover, Western Union never informed Plaintiff and the Class the funds remained in the possession of Western Union and that Western Union was retaining the funds and that the funds were available to be returned to Plaintiff and the Class.  Plaintiff and the Class alleged Western Union purposely, intentionally, knowingly and/or consciously refused and/or failed to notify Plaintiffs that it (Western Union) was still in possession of Plaintiff's and the Class's money so that Western Union was able to make surreptitious use of the Plaintiff's and Class's money for its own financial gain to the detriment of Plaintiff and the Class by depriving Plaintiff and the Class of the use of funds that rightfully belonged to them.

52.     At no time did Plaintiff or the Class consent to Western Union retaining possession of and making use of their (Plaintiff's and the Class') money for Western Union's

own selfish financial gain following an unsuccessful transfer of the funds or after the funds otherwise went unredeemed.

53.     Plaintiff and the Class thus allege Western Union converted to its own use and benefit Plaintiff's and the Class's money in violation of Plaintiff's and the Class's rights to ownership, possession, and/or use of those funds.  By engaging in the aforementioned conduct, Western Union deprived Plaintiff and the Class of their rightful ownership, possession and/or use of their own money.

54.     As a direct and proximate cause of Western Union's conduct of converting Plaintiff's and the Class's money as herein alleged, Plaintiff and the Class have suffered harm, injury and/or damages in that they lost the use and/or benefit of their money while it remained with Western Union including but not limited to lost interest that would otherwise have been earned by Plaintiff and the Class all in an amount according to proof at trial.

55.      Plaintiff and the Class further allege Western Union at all times had actual knowledge or in the exercise of reasonable care should have known based upon, among other things, its having been sued in the *Tennille* class action that its conduct of keeping possession of, and making use of, Plaintiff's and the Class's money which had not been transferred and/or was otherwise unredeemed was unlawful and/or otherwise in violation of Plaintiff's and the Class' rights to ownership, possession and/or use of their own money.

56.     Based on the facts alleged Defendants Western Union and Western Union Financial Services' and each of their conduct of converting Plaintiff's and the Class's money was intentional, purposeful, willful, wanton, callous and done with a conscious disregard for the rights of Plaintiff and the Class and thus entitled Plaintiff and the Class to imposition of punitive or exemplary damages against Defendants Western Union Company and/or Western Union Financial Services, Inc., in an amount according to proof but necessary to punish and/or deter similar and future conduct and/or to set an example for others who are engaged in the money transfer business or industry.  Plaintiff alleges the conduct as herein alleged was implemented,

*Radulescu v. The Western Union Company*

authorized, approved, ratified, and/or directed by Western Union's managing agents including but not limited to Khalid Fellahi, President Consumer Money Transfer, who is responsible for Western Union's consumer money transfer business globally.

## SECOND CAUSE OF ACTION
### (Violation of Colorado Consumer Protection Act; Alternatively, Violation of Various State Consumer Protection Laws)

57.     Plaintiff repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

58.     At all times hereto, there was in full force and effect the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105 *et seq*. ("the Colorado Act").[1]

59.     Plaintiff and other Class members, whose money sent through Western Union's services went uncollected, are consumers within the meaning of the Colorado Act given that Western Union's business activities involve trade or commerce, are addressed to the market generally and otherwise implicate consumer protection concerns.

60.     The Colorado Act renders unlawful the use or employment of any deception [including the] concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact ... in the conduct of any trade or commerce.  See, Colo. Rev. Stat. § 6-1-105, sub. nnn.

61.     Western Union intended Plaintiffs and the Class would rely on the deception by purchasing Western Union's services unaware of the material facts including but not limited to:

> (a)     that should the money go unredeemed Western Union would not inform Plaintiff and the Class until many years had passed depriving consumers of the use and benefit of their money, and Western Union would eventually notify the consumers only when the money would escheat to the state by applicable law;

---

[1]     Should Colorado law not apply to the Class, then this Count is also brought pursuant to substantially similar state consumer protection statutes identical in their material respects - *see e.g.*, Ala. Code § 8-19-1 *et seq*. (Alabama); Cal. Bus. & Prof. Code § 17200 *et seq*., and Cal. Bus. & Prof. Code § 17200 *et seq*. (California); Fla. Stat. Ann. § 501.201 *et seq*. (Florida); 815 ILCS 505/1 *et seq*. (Illinois); Mich. Stat. Ann § 445.901 *et seq*., Mich. Stat. Ann. § 19.418(1) *et seq*. (Michigan); N.J. Rev. Stat. § 56:8- 1 *et seq*., N.J. Rev. Stat. § 56:12-1 *et seq*. (New Jersey); N.Y. Gen. Bus. Law. § 349 *et seq*. (New York); Ohio Rev. Code Ann. § 1345.01 *et seq*. (Ohio).

*Radulescu v. The Western Union Company*

(b)      that should the money go unredeemed Western Union was not returning the money in a timely fashion, or until required to do so by state laws governing escheat of property; and

(c)      that Western Union would use the consumer's unredeemed money for its own benefit to generate interest and investment returns which Western Union would keep for itself.

This conduct constitutes consumer fraud within the meaning of the various consumer protection statutes.

62.     If Western Union had disclosed the above facts to Plaintiff and the Class, or otherwise made Plaintiff and the Class aware of these material facts, Plaintiff and the Class could have (and foreseeably would have) prevented economic injury by either negotiating a lower price to reflect risk or simply avoiding the risk altogether by going to another money transfer service.

63.     Western Union's conduct alleged herein is furthermore unfair insofar as it offends public policy; is so oppressive that the consumer has little alternative but to submit; and causes consumers substantial injury.

64.     The omission of a material fact, such as that alleged here, impacts the public as actual or potential consumers of Western Union's services. All other consumers of Western Union's services are affected the same as the Plaintiff if their money transfers go unredeemed. As a direct and proximate result of the above-described breach, Plaintiff and the Class have been damaged.

### THIRD CAUSE OF ACTION
**(Violation of Washington Unfair Business Practices–Consumer Protection Act RCW 19.86, *et seq.*)**

65.     Plaintiff repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

66.     At all times hereto, there was in full force and effect the Washington Unfair Business Practices – Consumer Protection Act.  See, Washington RCW 19.86, *et seq.*

*Radulescu v. The Western Union Company*

67.     Plaintiff and other members of the Class are residents of Washington state, whose money they sent through Western Union's services and which money went uncollected and/or unredeemed.  Plaintiff and the Class are consumers within the meaning of the Washington Act given Western Union's business activities involve trade or commerce, are addressed to the market generally, and otherwise implicate public interest concerns.

68.     The Washington Act renders unlawful any unfair or deceptive acts or practices in the conduct of any trade or commerce. See, RCW 19.86.020; see also, RCW 19.86.093.

69.     Western Union intended Plaintiffs and the Class would rely on the deception by purchasing Western Union's services unaware of the material facts including but not limited to:

(a)     that should the money go unredeemed Western Union would not inform Plaintiff and the Class until many years had passed depriving consumers of the use and benefit of their money, and Western Union would eventually notify the consumers only when the money would escheat to the state by applicable law;

(b)     that should the money go unredeemed Western Union was not returning the money in a timely fashion, or until required to do so by state laws governing escheat of property; and

(c)     that Western Union would use the consumer's unredeemed money for its own benefit to generate interest and investment returns which Western Union would keep for itself.

This conduct constitutes an unfair or deceptive business act or practice within the meaning of the Washington Consumer Practice Act because Western Union's acts or conduct as alleged are unfair or deceptive, occurred in the course of trade or commerce, affect the public interest because such conduct was part of a pattern or generalized course of conduct by Western Union and likely to be repeated thereby harming other consumers in the same fashion, and caused Plaintiff and the Class actual harm, losses, injury or damage.

70.     Western Union's conduct alleged herein is furthermore unfair or deceptive insofar as it offends public policy; is so oppressive that the consumer has little alternative but to submit; and causes consumers substantial injury.

*Radulescu v. The Western Union Company*

71.     The omission of a material fact(s), such as that alleged here, impacts the public as actual or potential consumers of Western Union's services. All other consumers of Western Union's services are likely to be affected the same as the Plaintiff if their money transfers go unredeemed. As a direct and proximate result of the above-described breach, Plaintiff and the Class have been damaged.

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment)

72.     Plaintiff repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein, and in the alternative to Count I.

73.     In August 2018, more than five years after accepting Plaintiff's payment, Western Union notified Plaintiff via a letter that her payment would be forfeited if she did not request a refund within a specified time period. Prior to receiving the letter, Western Union never previously informed Plaintiff the payment was unredeemed, and that Western Union had been using Plaintiff's funds to generate income for itself.

74.     Western Union has been unjustly enriched by enjoying the benefits of Plaintiff's and the Class's monies, including utilizing the funds to generate income for itself for nearly five years.

75.     Under the circumstances, it is inequitable for Western Union to retain these benefits at the expense of Plaintiff and the Class.

76.     Such conduct sounds in equity under the common law of unjust enrichment, or money had and received, and constructive trust.

77.     Plaintiff and the Class have no adequate remedy at law.

78.     As a direct and proximate result of the above-described breach, Plaintiff and the Class have been damaged.

## FIFTH CAUSE OF ACTION
### (Declaratory Relief Pursuant To 28 U.S.C. § 2201)

*Radulescu v. The Western Union Company*

79.     Plaintiff repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

80.     There is an actual controversy between Western Union and the Class concerning whether Western Union should be able to hold on to unredeemed funds owned by the Class for a period longer than 60 days.

81.     Pursuant to 28 U.S.C. § 2201 this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

82.     Western Union has wrongfully held on to money rightfully owned by the Class, without notifying the class it was holding the money, or offering to return the money, for periods of up to and surpassing 5 years all the while using such funds for its own benefit.

83.     Accordingly, Plaintiff seeks a declaration that Western Union should be prohibited from holding onto unredeemed funds owned by the Class for any amount of time longer than 60 days.

## SIXTH CAUSE OF ACTION

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

84.     Plaintiff repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

85.     On April 11, 2013, Plaintiff entered into a contractual relationship with Western Union whereby, for a charged and collected fee from Plaintiff, Western Union was to deliver Plaintiff's money to an intended recipient.

86.     The covenant of good faith and fair dealing, implied by law in every contract, exists to prevent one contracting party from unfairly frustrating or interfering with the other party's right to receive the benefits of the agreement actually made.  The covenant of good faith and fair dealing also arises when one party to the contract retains discretionary authority over terms and/or performance of the contract.  Here, Western Union frustrated and/or interfered with

*Radulescu v. The Western Union Company*

Plaintiff and the Class' rights and benefit of the contract which was to have Western Union wire Plaintiff and the Class' money to another person and if the transaction was not accomplished or the money went unredeemed Plaintiff's and the Class's money would be returned to them. There was no term of the contract whereby Western Union was granted permission to keep Plaintiff's and the Class's money for Western Union's own selfish benefit if the transfer was unsuccessful or otherwise went unredeemed.

87.     Western Union breached the implied covenant of good faith and fair dealing when it exercised its discretion and chose to wait more than five (5) years after accepting Plaintiff's money to be transferred, to notify Plaintiff for the first time via letter that her attempted transfer of funds was unsuccessful and/or went unredeemed, and if Plaintiff did not timely request return of the funds they would escheat to the state. Western Union further breached the implied covenant of good faith and fair dealing when it exercised discretion to surreptitiously retain Plaintiff and the Class' money and make use of the money for its own selfish financial gain.

88.     Furthermore, Western Union also breached the implied covenant of good faith and fair dealing when it wanted to withhold and did withhold a significant portion of Plaintiff's money before returning it to her after five years.

89.     As a direct and proximate result of the above-described breach, Plaintiff and the Class have been damaged.

## SEVENTH CAUSE OF ACTION

### (Breach of Fiduciary Duty)

90.     Plaintiff repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

91.     Plaintiff and the Class entered into a financial and contractual business relationship with Western Union whereby Plaintiff and the Class entrusted to Western Union, for a fee, money for the purposes of delivering it to an intended recipient. Western Union was entrusted with Plaintiff's and the Class's money. Moreover, Western Union charged and

*Radulescu v. The Western Union Company*

Plaintiff and the Class paid a fee for Western Union's trust and proper handling of their money and thereon Western Union owed Plaintiff and the Class a fiduciary duty with regard to the handling, use and disposition of Plaintiff's and the Class' money.

92.     Many of Western Union's customers who use Western Union to send money, as Plaintiff and the Class did, are by comparison with those at Western Union not as sophisticated or as business-savvy.

93.     Western Union breached its fiduciary duties owed to Plaintiff and the Class when Western Union waited more than five (5) years after accepting Plaintiff's money to be transferred, to notify Plaintiff for the first time via letter that her attempted transfer of funds was unsuccessful and/or went unredeemed, and if Plaintiff did not timely request return of the funds they would escheat to the state.  Western Union further breached its fiduciary duties to Plaintiff and the Class when it surreptitiously retained Plaintiff and the Class' money and made use of the money for its own selfish financial gain.

94.     As a proximate result of Western Union's breach of its fiduciary duties, Plaintiff has thereon sustained economic damages in an amount according to proof at trial.

95.     Western Union's actions and conduct by and through its directors, officers, managing agents including but not limited to Khalid Fellahi, President Consumer Money Transfer, who is responsible for Western Union's consumer money transfer business globally, were malicious, fraudulent, and/or oppressive and done with a conscious disregard for the rights of Plaintiff and the fiduciary duties owed by Western Union such that Plaintiff is entitled to an award of punitive or exemplary damages against Defendants Western Union Company and/or Western Union Financial Services, Inc., in an amount according to proof but necessary to punish and/or deter similar and future conduct and/or to set an example for others who are engaged in the money transfer business or industry.  Plaintiff alleges the conduct as herein alleged was implemented, authorized, approved, ratified, and/or directed by Western Union's managing

*Radulescu v. The Western Union Company*

agents including but not limited to Khalid Fellahi, President Consumer Money Transfer, who is responsible for Western Union's consumer money transfer business globally.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class of persons defined herein, prays for an Order providing as follows:

1. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class defined herein;

2. Designating Plaintiff as representative of the Class and her undersigned counsel as Class counsel;

3. Entering judgment in favor of Plaintiff and the Class and against Western Union;

4. Granting the relief sought herein and awarding Plaintiff and Class members their individual damages, attorneys' fees and costs, including interest thereon, as allowed by law;

5. Restitution and/or disgorgement of all ill-gotten monies and/or gains realized by Defendant, plus applicable interest thereon, to Plaintiff and the Class; and

6. Imposition of punitive or exemplary damages against Defendants Western Union Company and/or Western Union Financial Services, Inc., in an amount according to proof but necessary to punish and/or deter similar and future conduct and/or to set an example for others who are engaged in the money transfer business or industry.

7. For costs of suit, and all such further and other relief as the Court deems equitable, just and appropriate.

*Radulescu v. The Western Union Company*

Dated: October 15, 2019                    By:

                                          /s/ Robert Radulescu
                                          Robert Radulescu
                                          ROMANCORE LAW, P.C.
                                          401 W A St, #1100
                                          San Diego, California, 92101
                                          Telephone: (619) 766-2626
                                          Email: robert@romancorelaw.com

                                          Robert A. Waller, Jr.
                                          Law Office of Robert A. Waller, Jr.
                                          P.O. Box 999
                                          Cardiff-by-the-Sea, California 92007
                                          Telephone: (760) 753-3118
                                          Facsimile: (760) 753-3206
                                          Email: robert@robertwallerlaw.com

                                          **Attorneys for Plaintiff Ibolya Radulescu and**
                                          **all others similarly situated**

## JURY DEMAND

     Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: October 15, 2019                    By:

                                          /s/ Robert Radulescu
                                          Robert Radulescu
                                          ROMANCORE LAW, P.C.
                                          401 W A St, #1100
                                          San Diego, California, 92101
                                          Telephone: (619) 766-2626
                                          Email: robert@romancorelaw.com

                                          Robert A. Waller, Jr.
                                          Law Office of Robert A. Waller, Jr.
                                          P.O. Box 999
                                          Cardiff-by-the-Sea, California 92007
                                          Telephone: (760) 753-3118
                                          Facsimile: (760) 753-3206
                                          Email: robert@robertwallerlaw.com

                                          **Attorneys for Plaintiff Ibolya Radulescu and**
                                          **all others similarly situated**

*Radulescu v. The Western Union Company*